UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PEOPLE'S UNITED BANK, | : | CIV. A. NO. 08-CV-01858 (PCD) |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| PEOPLESBANK, | : | |
| | : | |
| Defendant. | : | June 21, 2010 |

## NOTICE OF APPEAL

Notice is hereby given that PeoplesBank, defendant in the above-named case, hereby

appeals to the United States Court of Appeals for the Second Circuit from the Ruling on Motion

for Preliminary Injunction dated and entered on June 17, 2010, Docket No. 179 (attached at

Exhibit A), denying PeoplesBank's motion for a preliminary injunction.

DEFENDANT,
PEOPLESBANK

_____

Dominic Fulco III  (ct06494)
Nicholas J. Harding  (ct06387)
Counsel for Defendant PeoplesBank
REID AND RIEGE, P.C.
One Financial Plaza, 21st Floor
Hartford, CT 06103
Tel:  (860) 240-1031
Fax:  (860) 240-1002
dfulco@reidandriege.com
nharding@reidandriege.com

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

PEOPLE'S UNITED BANK,      :
     Plaintiff,         :
                             :
     v.                   :     Case No. 3:08cv01858 (PCD)
                             :
PEOPLESBANK,          :
     Defendant.       :

## RULING ON MOTION FOR PRELIMINARY INUNCTION

Defendant PeoplesBank moves to preliminarily enjoin Plaintiff People's United Bank from using the name "People's United Bank," or any variant of the name containing the word "peoples," alone or as part of a logo, on exterior signs and billboards and in advertising and marketing in Berkshire, Franklin, Hampden and Hampshire counties in Massachusetts ("Western Massachusetts").  A six day hearing on the motion was held from May 10 through May 17, 2010. For the reasons stated below, Defendant's Motion for a Preliminary Injunction [Doc. No. 88] is **denied.**

## I.     Background

On December 8, 2008, Plaintiff People's United Bank filed this action seeking a declaration of non-infringement of Defendant PeoplesBank's trademark.  On December 23, 2008, Defendant PeoplesBank filed an action in Massachusetts against Plaintiff People's United Bank asserting claims for: 1) false advertising under the Lanham Act, Section 43(a)(1)(B) (15 U.S.C. § 1125(a)(1)(B)); 2) false designation of origin under the Lanham Act, Section 43(a)(1)(A) (15 U.S.C. § 1125 (a)(1)(A)); 3) infringement of a Massachusetts "state

registered" service mark under the General Laws of Massachusetts, Chapter 110H, Section 12

(M.G.L. c. 110H § 12); and 4) unfair and deceptive practices under the General Laws of

Massachusetts, Chapter 93A, Sections 2 and 11 (M.G.L. c. 93A §§ 2, 11).  The Massachusetts

action was transferred to this Court.  On April 6, 2009, this Court denied PeoplesBank's motion

to transfer venue back to Massachusetts and consolidated the Massachusetts and Connecticut

actions.

Plaintiff People's United Bank is a Bridgeport, Connecticut based federally chartered

stock savings bank. (Compl. ¶¶ 6-9.)  In January 2008, Plaintiff's holding company acquired two

Massachusetts banks, the Bank of Western Massachusetts and Flagship Bank and Trust

Company, as part of its acquisition of Chittenden Corporation.  Plaintiff seeks to use the name

"People's United Bank" in conjunction with its recent acquisitions in Massachusetts. (Id. ¶ 4.)

Defendant seeks to enjoin the use of the "People's United Bank" mark in Western Massachusetts

and opposed five federal service mark applications submitted by Plaintiff. (Id.)

Defendant PeoplesBank is a state chartered Massachusetts bank operating sixteen

branches and thirty-five ATM locations in Hampden and Hampshire counties. (Def.'s Mot.

Dismiss at 5.)  PeoplesBank has operated as a local Massachusetts bank continuously since 1885.

It has used the "PeoplesBank" name and service mark since 2001.  Defendant has a

Massachusetts state registration for the words "Peoples Bank" for banking services.

PeoplesBank was also granted a Massachusetts state registration for PeoplesBank next to an icon,

as a service mark for banking services.  In the last decade, PeoplesBank has grown to a total

worth of more than $1.5 billion and is third in Western Massachusetts market share for customer

deposits.

Defendant argues that it has aggressively promoted itself and advertised using its mark.  It submits that the mark symbolizes a "reputable Massachusetts local bank, run for 125 years by local individuals who are members of the communities where its branches are located." PeoplesBank has an advertising budget over $1 million per year and uses its mark in all advertising.

From the 1980s through 2001, Plaintiff was known as "People's Bank" and Defendant was known as "Peoples Bank."  In 2001, Defendant became "PeoplesBank." (Pl.'s Post-Hearing Br. at 7.)  Then, on June 7, 2007, Plaintiff changed its name to People's United Bank in order to distinguish itself from other banks. (Id.)  People's United Bank has expanded in the last several years and now has 300 branches across New England, as well as five in Westchester County, New York.  People's United Bank has twenty-two branches in Massachusetts, including the greater Boston area.  With just under $21 billion in assets, People's United Bank is the largest bank headquartered in New England. (Tr. 898-99.[1])

In January 2008, People's United Bank acquired Chittenden Corporation, which included the Bank of Western Massachusetts and Flagship Bank.  In January 2009, People's United consolidated the charters of all its acquisitions.  Since that time, Plaintiff has been operating in Massachusetts under the names, "The Bank of Western Massachusetts, a division of People's United Bank" and "Flagship Bank, a division of People's United Bank."  The "division of" language is required by federal regulation because the Bank of Western Massachusetts and Flagship Bank are now operating under the People's United charter. (Tr. 905-06.)  Over

---

[1]     The transcripts cited in this opinion are not the official court transcripts.  In the interest of speedily resolving this motion, the parties have agreed to rely on the transcripts of their joint private reporter for the purposes of this motion.

objections by PeoplesBank, the tag line "division of People's United Bank" has been used in

Massachusetts advertisements, on interior signs, and on Plaintiff's website.

People's United Bank plans to convert the operating system of its 300 branches to a

single technology platform.  This conversion is scheduled for July 2010.  As of July 19, 2010,

People's United Bank will operate as one bank, with one name, one website and one technology

interface.  All documents which identify the bank, including deposit statements and loan

documents, will use the People's United Bank name and logo.  Customers will be able to use all

300 branches interchangeably, no matter their home branch. (Tr. 914.)  In connection with this

technology conversion, People's United Bank plans to re-brand the Bank of Western

Massachusetts and Flagship Bank to be known only as "People's United Bank."

Pending before the Court is a Motion for Preliminary Injunction filed by Defendant

PeoplesBank.  PeoplesBank seeks to preliminarily enjoin and restrain Plaintiff from using the

name "People's United Bank," alone or as part of a logo, on exterior signs, advertising and

marketing in Western Massachusetts.  PeoplesBank does not seek to enjoin Plaintiff from using

the phrase " a division of People's United Bank" on interior signs or advertising.


**II. Standard of Review**

**A. Standard for preliminary injunction under the Lanham Act**

Normally, "a plaintiff seeking a preliminary injunction must establish that he is likely to

succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

relief, that the balance of equities tips in his favor, and that an injunction is in the public

interest." Winter v. NRDC, Inc., 129 S. Ct. 365, 374 (2008) (citing Munaf v. Geren, 128 S. Ct.

4

2207 (2008) (slip op., at 12); Amoco Production Co. v. Gambell, 480 U.S. 531, 542 (1987);

Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-12 (1982)).

    In trademark cases, however, courts have held that irreparable harm is inherent in the

proof of likely success on the merits and have not required a showing of harm apart from a

showing of confusion.  "Assuming that a particular mark warrants protection under the Lanham

Act, the requisite likelihood of success on the merits and irreparable harm can both be

established by showing a likelihood that an appreciable number of ordinarily prudent purchasers

are likely to be misled, or . . . simply confused, as to the source of the goods in question."

Western Publ'g Co. v. Rose Art Indus., Inc., 910 F.2d 57, 59 (2d Cir. 1990) (citing Charles of the

Ritz Group Ltd. v. Quality King Distribs., Inc., 832 F.2d 1317, 1321 (2d Cir. 1987); Hasbro, Inc.

v. Lanard Toys, Ltd., 858 F.2d 70, 73 (2d Cir. 1988)).  However, a recent Second Circuit case

calls this standard into question.

    Prior to 2006, in patent, copyright and trademark cases, a plaintiff's establishment of a

*prima facie* case of infringement was sufficient for the granting of an injunction.  Then, in eBay

Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006), the Supreme Court held that the traditional

four factor equity test must be satisfied in patent cases for an injunction to issue.  Even in a

patent case, a plaintiff must make a separate showing of irreparable harm.  In Salinger v. Colting,

No. Civ. 09-2878, 2010 WL 1729126 (2d Cir. Apr. 30, 2010), the Second Circuit applied eBay to

a copyright case.  In Salinger, the court held that in both the patent and copyright contexts, a

finding of likelihood of success on the merits is not enough to justify a preliminary injunction.

The Second Circuit noted that "our Circuit's standard is inconsistent with the 'test historically

employed by courts of equity' and has, therefore, been abrogated by eBay, Inc. v. MercExchange,

L.L.C., 547 U.S. 388, 390 (2006)." Id. at *5.  The court went on to state: "we hold today that eBay applies with equal force (a) to preliminary injunctions (b) that are issued for alleged copyright infringement.  First, nothing in the text or the logic of eBay suggests that its rule is limited to patent cases. On the contrary, eBay strongly indicates that the traditional principles of equity it employed are the presumptive standard for injunctions in any context." Id. at *7. Although Salinger does not specifically apply this change to trademark law, this Court does not see how Salinger's reasoning can be distinguished in the trademark context.  The Second Circuit's admonition that a court "must not adopt a 'categorical' or 'general' rule or presume that the plaintiff will suffer irreparable harm," Id. at *9, is as applicable to trademark as copyright.  It would be illogical if trademark was the only intellectual property regime holding harm inherent in a *prima facie* case of infringement.  Therefore, this Court will follow the Second Circuit's prescription that "the traditional principles of equity it employed are the presumptive standard for injunctions in any context," Id. at *7, and require Defendant to prove irreparable harm before granting its motion.

**III.  Discussion**

**A. Likelihood of Success on the Merits**

*1.  Secondary Meaning*

In order to prove a likelihood of success, PeoplesBank must first show that its mark merits protection under the Lanham Act.  "PeoplesBank" is a service mark that has been used since the mid-1980s.  Whether a mark is afforded trademark protection depends upon where the mark fits along a spectrum of categories that includes generic, descriptive, suggestive, arbitrary

and fanciful marks.  Generic terms refer to the genus or class of which the product is a species,

and are not entitled to protection even with proof of secondary meaning.  Descriptive terms

convey an immediate idea of some characteristic or attribute of the product and are entitled to

protection with proof of secondary meaning.  Suggestive terms require some imagination on the

part of the consumer to ascertain the nature of the product.  They are therefore distinctive enough

to be entitled to protection even without proof of secondary meaning.  Arbitrary or fanciful terms

are so distinctive and indicative of a product's source, rather than its qualities or attributes, that

they, unlike suggestive terms, enjoy automatic trademark protection.  PaperCutter, Inc. v. Fay's

Drug Co., 900 F.2d 558 (2d Cir. 1990); Commerce Bank & Trust Co. v. TD Banknorth, Inc., 554

F. Supp. 2d 77 (D. Mass. 2008).

Defendant's mark falls in the descriptive category.  Words such as 'community'

'national' or 'mutual' are usually descriptive when applied to banks.  Therefore, the mark is only

entitled to protection if it has acquired secondary meaning.  Secondary meaning requires that the

term, although not inherently distinctive, has become "uniquely associated with a single source."

If so, it is entitled to protection under the same principles applicable to inherently distinctive

designations. PaperCutter, 900 F.3d at 564; Gruner + Jahr USA Pub. v. Meredith Corp., 991 F.2d

1072, 1076 (2d Cir. 1993) (defining secondary meaning as "an identity that consumers associate

with a single source, even though the source itself may be unknown").  "The crucial question in a

case involving 'secondary meaning' always is whether the public is moved in any degree to buy

an article because of its source." Id. (citing American Footwear Corp. v. General Footwear Co.,

609 F.2d 655, 663 (2d Cir. 1979), cert. denied, 445 U.S. 951 (1980)).

Defendant argues that its mark has acquired secondary meaning in Western

Massachusetts. To determine whether this argument is substantiated, the Second Circuit looks to: 1) advertising expenditures; 2) consumer studies linking the mark to a source; 3) unsolicited media coverage of the product; 4) sales success; 5) attempts to plagiarize the mark; and 6) the length and exclusivity of the mark's use. See Conn. Cmty. Bank v. Bank of Greenwich, 578 F. Supp. 2d 405, 413 (D. Conn. 2008). Defendant's marketing director testified to a marketing budget of over $1 million per year and the bank has widely advertised its products and services in Western Massachusetts. (Testimony of Susan Wilson, Tr. 699.) Defendant's campaign also appears quite successful. PeoplesBank has expanded from seven to sixteen branches and its assets have grown from $600 million to $1.5 billion in the last ten years. (Senecal Amend. Dec., Ex. DZ ¶¶ 13, 14.)

Furthermore, Hal Poret, Defendant's expert, conducted a survey among 300 potential banking customers in Western Massachusetts to determine whether PeoplesBank has acquired a secondary meaning in Berkshire, Franklin, Hampden and Hampshire counties. The study found that 71% (after subtraction for "noise") of consumers associate PeoplesBank with one source of banking services. (Ex. BM.) The study found the same result across age and gender groups. PeoplesBank also points to unsolicited media coverage using its mark in the Daily Hampshire Gazette, the Holyoke Sun and BusinessWest Online. (Exs. DI, DN, EC, ED.)

Looking at these factors together, it is clear that "PeoplesBank" has secondary meaning in the four counties of Western Massachusetts. Defendant has invested a significant amount of money and manpower in a successful campaign to increase its business and brand. Consumers in Western Massachusetts recognize PeoplesBank as a specific product source.

## 2. Likelihood of Confusion between "PeoplesBank" and "People's United Bank"

8

The seminal case on confusion is Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492 (2d Cir. 1961). To determine the likelihood of confusion, the Second Circuit looks to the eight factors set forth in Polaroid: 1) the strength of [PeoplesBank's] mark; 2) the degree of similarity between the two marks; 3) the proximity of the products; 4) the likelihood that the prior owner will bridge the gap; 5) actual confusion; 6) the reciprocal of [People's United Bank's] good faith in adopting its own mark; 7) the quality of [People's United Bank's] product; and 8) the sophistication of the buyers. Charles of Ritz Group, Ltd., 832 F.2d at 1321; Thompson Med. Co. Inc. v. Pfizer, Inc., 753 F.2d 208, 213-14 (2d Cir. 1985). "The Polaroid inquiry, however, is not a mechanical process where the party with the greatest number of factors weighing in its favor wins." Playtex Prods. v. Georgia-Pacific Corp., 390 F.3d 158, 166 (2d Cir. 2004) (citing Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43 (2d Cir. 2000)). A court does not have to weigh each factor equally.

**Strength of the Mark**

Although PeoplesBank has acquired secondary meaning in Western Massachusetts, it cannot plausibly claim a monopoly over the word "people" in relation to banking. Across the country, there are currently 159 FDIC insured banking institutions with names containing the word "people." (Ex. 189.) Furthermore, thirty states and seventeen metro areas have two or more banks whose name contains the term "people." (Ex. 192.) One hundred forty of these banks have websites. (Ex. 195.) The PeoplesBank mark has secondary meaning within a small market, but the term is clearly a common one in the industry and across the states. Therefore, the strength of the mark does not weigh in either party's favor.

**Similarity of the Parties' Marks**

9

This factor is determined by looking to the sound, sight and meaning of the marks at issue. Horn's, Inc. v. Sanofi Beaute, Inc., 963 F. Supp. 318 (2d Cir. 1997). This factor is not particularly helpful in the analysis of this case. Here, the meaning is similar - a bank that focuses on people. The sound is also fairly close - a difference of only one word. The sight, however, is distinctive. Each bank has a logo (See both logos, Pl.'s post hearing Br. at 23.) which is always viewed with the written words and is part of the "overall impression" created by each mark. Brennan's, Inc. v. Brennan's Restaurant, L.L.C., 360 F.3d 125, 133 (2d Cir. 2004). The logos are not similar and undoubtably help customers to distinguish between the entities. Therefore, despite the similarity in sound, this factor weighs only slightly in Defendant's favor.

*Proximity*

"The competitive proximity factor has two elements, market proximity and geographic proximity. Market proximity asks whether the two products are in related areas of commerce and geographic proximity looks to the geographic separation of the products. Both elements seek to determine whether the two products have an overlapping client base that creates a potential for confusion." Id. at 134. This factor seeks to determine whether the parties are competitors. PeoplesBank and People's United Bank are competitors and therefore this factor weighs in favor of Defendant's motion.

Although People's United Bank is the larger corporation and offers more extensive commercial services, both banks offer all basic retail and commercial banking services such as checking and savings accounts, ATMs, mortgages and personal loans. They are also found in geographic proximity. With its acquisition of the Bank of Western Massachusetts, People's United now operates in the same counties and towns as PeoplesBank. (Ex. FF).

10

***Bridging the Gap***

"The fourth Polaroid factor looks to either the likelihood that plaintiff will enter defendants' business or the average customer's perception of the likelihood that plaintiff will enter defendants' market." Verilux, Inc. v. Hahn, No. 3:05cv254, 2007 WL 2318819, *6 (D. Conn. Aug. 10, 2007). People's United Bank has already entered PeoplesBank's market area. There is no gap to bridge and this factor weighs in favor of Defendant's motion.

***Actual Confusion***

Several PeoplesBank employees testified to 'events' that Defendant argues show actual confusion. Margaret Lanihan, PeoplesBank first vice president in commercial banking, testified that a potential customer called and asked if PeoplesBank was affiliated with the Bank of Western Massachusetts. (Tr. 57-58.) She also testified that PeoplesBank received a wire transfer from the town of SouthBridge, which was intended for deposit into the town's People's United account. (Id. 66-69.) Nadine Maggi, assistant vice president of PeoplesBank's loan service department, testified that she received a check from Webster Bank addressed to People's United. (Id. 87-89.) Webster Bank eventually issued a new check but PeoplesBank lost a few days' per diem. (Id. 93-94.) Saroeun Soeng, head teller at PeoplesBank's Sumner Avenue branch, testified that four People's United customers attempted to make deposits at her branch.[2] (Id. 122-26.) Ms. Soeng also testified that a woman sought assistance after her People's United ATM card locked following three wrong entries of her pin at the PeoplesBank ATM. The woman asked to have her card unlocked, but only the bank which issues an ATM card can unlock it. (Id. 128-31.)

---

[2]       However, two of these incidents occurred before People's United began using its name in Massachusetts.

11

Katherine Campion, a PeoplesBank teller, testified that a man tried to cash a check drawn on People's United Bank, and a woman who wanted to use a People's United ATM card was surprised that she would incur a fee. (Id. 155-63.) A third customer tried to make a withdrawal from a People's United account. (Id. 164.) Finally, Sharon Ober, a People's United Bank customer, testified that she drove by a PeoplesBank branch and entered, mistaking it for a People's United branch. However, she also stated that she "wasn't paying attention" and "felt like an idiot." (Id. 332.)

In addition, Danielle Converse, a PeoplesBank teller, was deposed and testified to a customer inquiring about a security breach that occurred at People's United Bank. (Converse Dep. at 19-21.) The deposition designations also evidence additional events of the type described at the hearing.[3] Isaac Santana and Amy Martin testified to customers' attempts to cash checks drawn on People's United Bank. (Santana Dep. at 11, 28; Martin Dep. at 15, 32-33.) Ms. Martin, Ms. Converse, Malina Barrows, Mr. Santana, and Cynthia Childs from People's United Bank also testified to non-customers' attempts to make deposits or withdrawals at their branches. (Converse Dep. at 33, 39; Santana Dep. at 39; Barrows Dep. at 35; Martin Dep. at 10-11, 16; Childs Dep. at 18.)

However, very little of this testimony proves actual confusion. For the most part, Defendant was unable to show the state of the customer's mind. In fact, the only customer to

---

[3]     The parties offered several additional deposition designations that are not cited herein. Although the Court accepted this additional testimony, it carries little weight because it suffers from the same flaws as the live testimony. The additional quantity of 'events' do not bolster Defendant's case. They either took place before January 2009 (and are therefore irrelevant to the action), fail to prove confusion between the parties instead of confusion as to what services a bank offers non-customers, or are hearsay.

testify stated that she "wasn't paying attention," not that she was confused.  Defendant could not

prove that the consumers in most described events thought that PeoplesBank was the same as or

affiliated with People's United Bank.  For example, consumers might believe that they can

unlock an ATM card where it locks or cash a check at any bank.  The only events which the

Court is persuaded show actual confusion are the customers of one party attempting to make

deposits or withdrawals at the other party's branch as well as the PeoplesBank customer's

concern over the People's United security breach.

   In order to obtain a preliminary injunction, however, Defendant must show that

Plaintiff's proposed use of its mark would *cause* or increase confusion.  Irina Selezneva and Isaac

Santana both testified that consumers often request services from banks where they are not

customers and get 'confused' between banks in the same area with obviously different names.

(Santana Dep. at 50.)  Ms. Selezneva, Brian Cox and Ms. Campion each testified to Bank of

America and Florence Savings Bank customers attempting to cash checks and make deposits at

both parties' branches. (Tr. 166; Tr. 1186-1206; Cox Dep. at 23-24.)  Therefore, in order to

warrant an injunction, Defendant must show that Plaintiff's actions would cause *additional*

confusion over this existing marketplace baseline.  It was unable to do so.  Similarly, many of the

events described at the hearing and in depositions occurred before Plaintiff began using its name

in Massachusetts and are therefore irrelevant to this motion.  Defendant did not show that

confusion increased following Plaintiff's use of  "People's United Bank" in Western

Massachusetts.[4]  This failure is crucial.  Defendant asks the Court to enjoin Plaintiff's proposed

---

[4]   While it is only since Plaintiff's acquisition of the Chittenden Corporation that the
parties operate branches in the same county, the two banks have a long history of close
proximity.  Both banks have operated in the "knowledge corridor" stretching from

action in order to maintain the status quo, but makes no showing that re-branding would cause confusion above the current rate.

PeoplesBank also offered survey evidence of confusion. Hal Poret, Defendant's expert, conducted an online survey among 700 banking consumers in Western Massachusetts. The survey used the sequential "squirt" method. Respondents were shown Defendant's mark (in photographs, advertisements or brochures) followed by three other banks' marks. Respondents were then asked if any of the three later banks were "the same as" or "affiliated with" Defendant. Some of the respondents were shown Plaintiff's mark in the second group, some were shown a control and some were shown "Bank of Western Massachusetts a division of People's United Bank." The survey found that 32% of respondents thought that the parties were the same or affiliated. (Ex. BN.) However, the Court agrees with Itamar Simonson, Plaintiff's rebuttal expert, that the survey was suggestive. The question posed - which if any of the banks are the same as or affiliated with Defendant - provokes a "demand effect." (Ex. 287.) The question is leading. It logically elicits more answers finding affiliation because respondents know what the survey tests. In addition, respondents actually exhibited more confusion between PeoplesBank and "Bank of Western Massachusetts, division of People's United Bank" than between PeoplesBank and "People's United Bank." (Ex. BN.) The fact that Defendant seeks to enjoin the use of a name which elicits less confusion than the status quo weighs heavily against

---

Franklin County to Hartford County, and both banks newspaper, radio and television advertising crossed the state border between Massachusetts and Connecticut. (Bowen Testimony, Tr. 260-63.) Furthermore, although PeoplesBank does not have branches in Connecticut, it defines its "market area" for many of its services to include counties in Connecticut. (Id. 203-10.) The history of these banks simultaneous operation in a broadly defined market area tends to show that over time and after exposure to both marks, consumers are able to distinguish between the parties.

Defendant's motion.

Furthermore, "for purposes of the Lanham Act, actual confusion means consumer confusion that enables a seller to pass off his goods as the goods of another.  To show actual confusion, [PeoplesBank] must demonstrate that [People's United Bank's] use could inflict commercial injury in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation." Sports Auth. v. Prime Hospitality Corp., 89 F.3d 955, 963 (2d Cir. 1996) (citations omitted); W.W.W. Pharmaceutical Co. v. Gillette Co., 984 F.2d 567, 574 (2d Cir. 1993) ("the relevant confusion is that which affects the purchasing and selling of the goods or services in question").[5]  PeoplesBank made no showing of commercial injury.  It did not proffer lost sales, accounts, business opportunities or even damage to goodwill and reputation.  None of the events presented to the Court evidenced confusion by consumers choosing where to bank or among providers of banking services.  Defendant did not proffer confusion which might alter consumers' behavior.  Defendant simply did not make the necessary connection between confusion and possible negative commercial impact.

In sum, despite a few instances of actual confusion between the parties, the Court finds that this prong of the Polaroid test favors People's United Bank.  Incidents of actual confusion

---

[5]     Defendant relies on Morningside Group, Ltd. v. Morningside Capital Group, L.L.C., 182 F.3d 133, 141 (2d Cir. 1999), for the proposition that it need not show commercial injury.  However, Morningside held that "evidence of actual confusion regarding affiliation or sponsorship is also entirely relevant to the ultimate likelihood-of-confusion inquiry" because where confusion regarding affiliation affects the senior user's reputation it inflicts commercial injury.  Defendant did not offer evidence of this type of confusion and Morningside did not hold that commercial injury is unnecessary to prevail.  Therefore, Defendant's reliance is unfounded.

were rare in comparison to the number of bank transactions engaged in each day. More

important, however, was Defendant's failure to connect these few incidents with the need for

protection via a preliminary injunction. Defendant made no showing that Plaintiff's use of its

name and logo in Western Massachusetts would increase the low-level confusion that has long

existed due to the parties' geographic proximity. Finally, Defendant failed to make the crucial

showing that confusion caused or will cause commercial injury. Without this showing, the Court

is highly reluctant to enjoin Plaintiff's good faith use of its own mark.

### Bad Faith

Defendant did not, and could not, present evidence of bad faith. It is clear that this prong

is not relevant here.

### Quality of [People's United Bank's] Product

"This factor is primarily concerned with whether the senior user's reputation could be

jeopardized by virtue of the fact that the junior user's product is of inferior quality." Sports

Authority, 89 F.3d at 965. There is no evidence that the banking products and services offered

by People's United Bank are of any better or worse quality than those offered by PeoplesBank.

This factor is not helpful to our analysis. (Def.'s Post-Hearing Br. at 49)

### Sophistication of the Buyers

The more sophisticated the consumers of a product are, the less likely that similarities in

trademarks will result in confusion concerning the source or sponsorship of the product. Horn's,

Inc. v. Sanofi Beaute, Inc., 963 F. Supp. 318 (2d Cir. 1997). Therefore, we must consider the

level of care and sophistication that consumers use when choosing a bank. Plaintiff's expert

Dwight Crane testified that 54% of consumers engage in a moderate amount of shopping for

investment and borrowing services. Before investing, 20% of consumers perform a great deal of

research and only 25% perform almost none. Before borrowing, 24% of consumers perform a

great deal of research and only 20% perform almost none. (Tr. 1284-95.) The Court is convinced

that for most consumers, banking is not an impulse purchase. A relatively high level of care and

at least some research into competing products is usually involved in the selection of banking

services. (See Ex. 288; Simonson Testimony, Tr. 563.) Therefore, consumers are more likely to

recognize the difference between the parties and less likely to be confused by their use of a

common term.

***Combining the Factors***

In sum, the Court finds that the <u>Polaroid</u> factors weigh in favor of Plaintiff People's

United Bank. At the hearing, Defendant focused on actual confusion. However, as noted above,

the Court found that Defendant did not adequately show confusion tending to cause commercial

injury. This crucial lack of proof, combined with the commonness of the term "peoples," the

parties' dissimilar logos, consumers' tendency to perform research before selecting a bank and

the parties' history in a shared regional market, results in a finding that PeoplesBank has not

shown a substantial likelihood of confusion.

***3. Claims Under Massachusetts Law***

The determination of trademark infringement is essentially identical under federal and

Massachusetts state law and does not need to be addressed separately. <u>Bay State Sav. Bank v.</u>

<u>Baystate Fin. Servs., L.L.C.</u>, 484 F. Supp. 2d 205, 219 (D. Mass. 2007).


**B. Irreparable Harm**

Defendant PeoplesBank made no showing of irreparable harm under either the previous Lanham Act standard or an application of <u>Salinger</u>, 2010 WL 1729126, to trademark cases. PeoplesBank argues that even after <u>Salinger</u>, irreparable harm may still be demonstrated by showing a likelihood of confusion. As just stated, however, PeoplesBank did not make this showing. Furthermore, this Court reads <u>Salinger</u> as requiring a separate inquiry into harm. Here, this inquiry is short as PeoplesBank did not even address harm to its finances, reputation or ability to attract business opportunities. In fact, during the time that People's United Bank has used their tag line "a division of People's United Bank" in Western Massachusetts, PeoplesBank has continued its ten year period of growth.


## C. Balance of Hardships

On the other hand, People's United Bank illustrated that a preliminary injunction would cause it significant hardship and monetary loss. People's United Bank seeks to become a "single brand" running "one bank." (Barnes Testimony, Tr. 909-10.) Plaintiff believes that converting its seven or eight divisions to a single bank will strengthen its brand and differentiate it from competitors. Jack Barnes, acting CEO, testified that Plaintiff's branches must be recognizable as one bank in order for People's United to market its significant "footprint" throughout the New England region. Barnes stated that the ability to bank "the same way" at locations from New York to Vermont is a convenience and significant draw for both retail and commercial customers. (<u>Id.</u> 900-02.) To accomplish its goal of becoming "one bank," Plaintiff committed to converting all of its 300 branches to a single technology platform. The branches in Massachusetts are scheduled to begin use of this platform on July 19, 2010.

Plaintiff hired Metavante, a technology company, to design and run this "single uniform operating system." The Metavante conversion is estimated to cost $40 million. (Id. 922.) The system is designed to "run a single instance of a bank. [We] then committed to an operating assumption that [we] would run one brand and that allowed us to plan that, for instance, no matter which of the 300 branches the customers' deposits were originated from, managed, if you will, that we could design the system to deliver a statement with a common brand." (Id. 910.) The new operating system is only able to generate documents (deposit statements, loan applications, bills, etc.) with that common brand - the People's United name and logo. (Id. 929.) Therefore, the operating system conversion was intended to be implemented at the same time as the re-branding of every branch to "People's United Bank."

If this Court were to issue an injunction preventing Plaintiff from converting its branches in Western Massachusetts to "People's United Bank," Plaintiff would not be able to use the Metavante operating system in at least these locations. Plaintiff could not run an operating system that uses only the People's United Bank name and logo on all systems, records and bank generated documents, while leaving "Bank of Western Massachusetts, division of . . ." on the bank's exterior and advertising materials. Furthermore, it is not clear whether the system would be able to carve out the Bank of Western Massachusetts and Flagship Bank branches at this late stage. An injunction might therefore require Plaintiff to halt the entire conversion. Moreover, it is clear that even if the conversion is possible without including the Western Massachusetts branches, the effort would result in considerable delays. (Id. 929-30.) An injunction would therefore cause loss to Plaintiff's expensive investment in the Metavante system. Furthermore, an injunction would cause significant harm to Plaintiff's brand. Plaintiff would lose its ability, at

19

least in Western Massachusetts, to market its "one bank" convenience and exhibit its regional strength.

## IV. Conclusion

Defendant failed to prove any of the criteria necessary for a preliminary injunction. Therefore, Defendant's Motion for a Preliminary Injunction [Doc. No. **88**] is **denied**.  Both parties' Motions to Exclude Testimony [Doc. Nos. **127, 152**] are also **denied**.  Both Plaintiff and Defendant's additional proposed exhibits are accepted into evidence, with the exception of the portions of the confusion log (excluded during the hearing) found in exhibits CO, CU, 207-214 and 237.  At this stage, the Court finds it unnecessary to exclude based on the parties' relevancy objections.  Rather, the Court afforded only the weight deserving to any proposed exhibits. Irrelevant information simply was not considered.

SO ORDERED.

Dated at New Haven, Connecticut, this  17th  day of June, 2010.


_____/s/_____
Peter C. Dorsey, U.S. District Judge
United States District Court

20

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed, U.S. Mail, postage prepaid on this 21st day of June, 2010 and sent via email to:

Lawrence B. Friedman, Esq.
David H. Herrington, Esq.
Arminda B. Bepko, Esq.
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006

James T. Shearin, Esq.
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006

Dominic Fulco III

22193.000/517753.2